GILLIAN E. GOSCH
Assistant Federal Defender
Federal Defenders of Montana
Billings Branch Office
2702 Montana Avenue, Suite 101
Billings, MT 59101-2372
gillian_gosch@fd.org
Phone:  (406) 259-2459
Fax:  (406) 259-2569
          Attorney for Defendant

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JAREN MICHAEL STENNERSON,<br><br>Defendant. | Case. No. CR-22-139-BLG-SPW<br><br>**BRIEF IN SUPPORT OF<br>MOTION TO DISMISS** |

Defendant Jaren Michael Stennerson moves to dismiss Count 1 and Count 2 of his indictment pursuant to Fed. R. Crim. P. 12(b)(1).  Stennerson files this brief in support of the motion.

## Summary of the Argument

Rule 12(b)(1) states that "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits."

1

Dismissal is the appropriate remedy due to the unconstitutionality of 18 U.S.C. § 922(n) and 18 U.S.C. § 922(g)(3). 18 U.S.C. § 922(g)(3) prohibits any person "who is an unlawful user of or addicted to any controlled substance" from possessing a firearm. 18 U.S.C. § 922(n) provides that it is "unlawful for any person who is under indictment for a crime punishable by imprisonment for a term exceeding one year to ship or transport in interstate or foreign commerce any firearm or ammunition or receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."

In light of the new analytical framework established by *New York State Rifle and Pistol Association, Inc. v. Bruen*, 142 S. Ct. 2111 (2022), Section 922(n) and Section 922(g)(3) violate the Second Amendment. Under *Bruen*'s framework, because Section 922(n) and Section 922(g)(3) cover conduct that falls under the Second Amendment, the Government bears the burden of showing that Section 922(n) and Section 922(g)(3) are consistent with the nation's historical tradition of firearm regulation, which it cannot do. Because the Government cannot make this showing, Section 922(n) and Section 922(g)(3) impermissibly infringe upon Stennerson's Second Amendment rights. Additionally, Section 922(g)(3) violates the Fifth Amendment's Due Process Clause because it is unconstitutionally vague on its face and as applied to Stennerson. The Court should dismiss Counts 1 and 2

of Stennerson's indictment because Section 922(n) and Section 922(g)(3) cannot pass constitutional muster.

**Facts**

On February 11, 2019, Jaren Michael Stennerson was charged in Montana state court with Burglary, a felony. On August 30, 2019, Stennerson was charged in Montana state court with Criminal Possession of Dangerous Drugs, a felony. In August of 2020, Stennerson was charged in Montana state court with two counts of Felony Criminal Possession of Dangerous Drugs. As part of Stennerson's release conditions, issued on August 27, 2019, he may not possess a firearm, destructive device, or other dangerous weapon.

On March 30, 2022, while the felony state charges were pending, Stennerson was detained, and officers conducted a Terry search of his person. Officers seized a firearm, a CZ 9mm, from Stennerson's person and arrested Stennerson for possession of stolen property upon discovering that the firearm was reported stolen on March 30, 2021. Officers also seized a metal object that potentially obtained explosive material located in Stennerson's backpack. Stennerson was later charged in Montana state court with Possession of Destructive Devices.

On November 18, 2022, Stennerson was federally charged with and indicted on two counts: Count 1: Violation of 18 U.S.C. 922(g)(3) — Unlawful Drug User in

Possession of a Firearm and Count 2: Violation of 18 U.S.C. § 922(n) — Illegal Receipt of a Firearm by a Person under Indictment.

**Argument**

**I.     In light of the Supreme Court's decision in *Bruen*, because Section 922(n) and Section 922(g)(3) are not rooted in the Second Amendment's text or history, both are unconstitutional.**

The Second Amendment provides that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II.  In *New York State Rifle & Pistol Association, Inc. v. Bruen*, the Supreme Court clarified the analytical framework courts should employ in scrutinizing firearm regulation. 142 S. Ct. 2111, 2127 (2022).  The Court adopted a single step test, which required the government to "affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id.*  The Court reasoned that consistent with *Heller*, "when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. To justify its regulation, the government … must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Id.* at 2126. Only after the government makes this showing may a court find that a firearm regulation is individual conduct falling outside of the Second Amendment's

protections. *Id.* In other words, "[b]ecause the Second Amendment was adopted in 1791, only those regulations that would have been considered constitutional then can be constitutional now." *United States v. Butts*, 2022 WL 16553037, at *2 (D. Mont. Oct. 31, 2022) (quoting *United States v. Price*, 2022 WL 6968457, at *1 (S.D.W.V. Oct. 12, 2022)).

**A. Under *Bruen*, the Second Amendment's text covers conduct under both Section 922(n) and Section 922(g)(3) and thus, both are presumptively unconstitutional.**

Under *Bruen*'s new framework, a court must first determine whether the Second Amendment's text covers an individual's conduct. *Bruen*, 142 S. Ct. at 2129-30. The Second Amendment text "guarantee[s] the individual right to possess and carry weapons in case of confrontation" that does not depend upon service in the militia. *Id.* at 2127 (quoting *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008)).

Mr. Stennerson's conduct in possessing a firearm under Section 922(g)(3) is protected under the Second Amendment's guarantee. *See Bruen*, 142 S. Ct. at 2130. Additionally, the Second Amendment covers conduct of "receipt" under Section 922(n). *See, e.g.*, United States v. Quiroz, 2022 WL 4352482, at *4 (W.D. Tex. Sept. 19, 2022) (finding that "to keep and bear arms" encompasses receipt of a firearm). Because the conduct at issue under Section 922(n) and Section 922(g)(3) is covered

by the Second Amendment's text, the statutes are presumptively unconstitutional. *See Bruen*, 142 S. Ct. at 2129-30. Thus, when the Second Amendment's plain text covers the conduct at issue, the burden shifts to the Government to "justice its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.* at 2130.

**B. The Government cannot meet its burden of establishing that as of 1791,[1] there was a tradition of prohibiting individuals under indictment nor users of intoxicants from possessing firearms.**

To justify Section 922(n) and Section 922(g)(3)'s restrictions on firearm possession, the Government must demonstrate that these modern regulations are consistent with the Nation's historical firearm regulation. *Bruen*, 142 S. Ct. at 2131. If a "challenged regulation addresses a general social problem that has persisted since the 18th century, the lack of a distinctly similar historical regulation addressing that problem is relevant evidence that the challenged regulation is inconsistent with the Second Amendment." *Id.* When faced with "modern regulations that were unimaginable at the founding," these regulations may require a "more nuanced" approach looking at historical analogies "relatively similar" to modern regulation. *Id.* at 2132.

---

[1] *See Bruen*, 142 S. Ct. at 2163 (Barrett, J., concurring) (asserting that 1791, when the Bill of Rights was ratified, is the correct date for assessing the scope of permissible federal regulation of an individual right).

For both Section 922(n) and Section 922(g)(3), the Government must provide historical examples of regulations that are "distinctly similar" to both sections because the restrictions do not address "unprecedented social concerns or dramatic technological changes." *Bruen*, 142 S. Ct. at 2132-33. Section 922(n) creates a complete ban on firearm receipt, based upon indictment, which is a process older than and explicitly discussed in the Fifth Amendment. *See* U.S. Const. amend. V. Section 922(g)(3) addresses firearm violence by intoxicated individuals—a problem that existed in 1791.

**C. The Government cannot meet its burden to establish that there are "distinctly similar historical regulations" in this Nation's history that support firearm restrictions for individuals under indictment or for users of intoxicants.**

The history of barring indicted individuals from receiving firearms started in 1938 with the passage of the Federal Firearms Act ("FFA"). *See United States v. Quiroz*, 2022 WL 4352482, at *4 (W.D. Tex. Sept. 19, 2022) (discussing Section 922(n)'s history stemming from the Federal Firearms Act passed in 1938). Congress amended the FFA in 1961 to cover all individuals under felony indictment and expanded gun regulations under the Gun Control Act of 1968 ("GCA") to cover indictments at the state and federal levels. *Id.* at *4-5. The lack of "distinctly similar historical regulation" restricting firearm receipt for individuals under indictment,

particularly prior to the twentieth century, demonstrates that Section 922(n) is inconsistent with the Second Amendment.[2] *See Bruen*, 142 S. Ct. at 2131.

The Government faces a similar problem with Section 922(g)(3). Section 922(g)(3) is also an enactment arising from part of the Gun Control Act of 1968. Pub. Law 90-618. The recent nature to this statute and the lack of a distinctly similar historical regulation prohibiting users of intoxicants from possessing firearms demonstrates that Section 922(g)(3) is inconsistent with the Second Amendment. *See Bruen*, 142 S. Ct. at 2131.

Even if Section 922(n) and Section 922(g)(3) were considered uniquely modern regulations, there is limited support for restricting firearms for individuals under indictment or for users of intoxicants based upon similar historical analogues. The *Heller* Court considered "longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms" as presumptively lawful regulations. *District of Columbia v. Heller*, 554 U.S. 570, 626-27 (2008); *see*

---

[2] The Government cannot rely upon the passage of Section 922 to establish a long-standing historical tradition of prohibiting firearm possession by individuals under indictment. *See Bruen*, 142 S. Ct. at 2136-37. The Supreme Court in *Bruen* specifically rejected considering any twentieth century evidence as it "does not provide insight into the meaning of the Second Amendment when it contradicts earlier evidence." *Id.* at 2154 n.28.

*also McDonald,* 561 U.S. at 786 (holding that felon dispossession laws remained valid). These examples comport with the historical principle of disarming select groups for the sake of public safety, but the Government may only prove Section 922(n) and Section 922(g)(3)'s consistency with this historical tradition if the public safety regulations are "relatively similar." *See Bruen*, 142 S. Ct. at 2132-33. A court can determine if the regulations are "relatively similar" by looking at how and why the regulations burden the Second Amendment right. *Id.*

The Government cannot rely upon these general public safety justifications to uphold either Section 922(n) or Section 922(g)(3). *See Bruen*, 142 S. Ct. at 2126 (explaining that the "government may not simply posit that the regulation promotes an important interest"). Further, Section 922(n) and Section 922(g)(3) do not pose the same inherent threat to public safety as the examples laid out in *Heller*. Section 922(n) is not limited to individuals under indictment for violent offenses and it does not require an individual determination as to dangerousness. Section 922(g)(3) only prohibits "unlawful users" of a controlled substance from possessing firearms and does not require that the user be under the influence of a controlled substance while possessing the firearm. The lack of limitations imposed on the scope of Section 922(n) and Section 922(g)(3) creates greater individual burdens imposed upon individuals than those burdens imposed by the general public safety regulations laid out in *Heller*.

Further, Stennerson qualifies as part of "the people" entitled to Second Amendment protections. The Second Amendment's text does not give any indication that suggests drug users are not among "the people" entitled to the Amendment's protection. *Bruen*'s holding remained consistent with *Heller* and *McDonald* by repeatedly using the term "law-abiding citizen" to qualify who could exercise individual Second Amendment rights. *See United States v. Butts*, 2022 WL 16553037, at *2 (D. Mont. Oct. 31, 2022) (citing multiple examples of the use of the term "law-abiding citizen" throughout the *Bruen* opinion). Courts have routinely found that individuals under indictment are "law-abiding citizens." *See, e.g.*, *United States v. Laurent*, 861 F. Supp. 71, 102 (E.D.N.Y. 2011) ("a defendant under indictment is a 'law-abiding citizen' who remains eligible for Second Amendment protection.'"); *United States v. Love*, 2021 WL 5758940, at *3 (E.D. Mich. Dec. 3, 2021) ("The purchase of a firearm by a presumably innocent individual falls within the Second Amendment right as historically understood."). Thus, Stennerson qualifies as a "law-abiding citizen" and *Heller*'s endorsement of felon-in-possession laws as constitutional has little bearing on the constitutionality of Section 922(n).[3]

---

[3] *See also United States v. Quiroz*, 2022 WL 4352482, at *10 (W.D. Tex. Sept. 19, 2022) (explaining that while the Nation does have a history of excluding specific groups, such as felons, from exercising certain rights reserved to "the people," there is little historical evidence supporting the exclusion of those under indictment).

Because the Government cannot show that Section 922(n) is consistent with the Nation's historical tradition of firearm regulation, *Bruen*'s analytical framework renders Section 922(n) violative of the Second Amendment.  Further, because Section 922(g)(3)'s prohibition is not analogous to any founding period restrictions, the lack of a "distinctly similar historical regulation" would indicate that Section 922(g)(3) is unconstitutional because it is inconsistent with the Second Amendment. *See Bruen*, 142 S. Ct. at 2131.

## II. Section 922(g)(3)'s prohibition on gun possession by anyone who is "an unlawful user of or addicted to any controlled substance" is unconstitutionally vague.

Mr. Stennerson maintains that Section 922(g)(3) is unconstitutionally vague on its face and as applied because it fails to properly notify ordinary people of what conduct constitutes a violation.  Specifically, Section 922(g)(3) fails to define "unlawful user" nor gives notice of a temporal requirement between unlawful drug use and gun possession. Section 922(g)(3) undermines separation of powers principles because it invites the judiciary to perform legislative functions in defining a criminal offense.

The Fifth Amendment provides that "[n]o person shall … be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V.  The Government violates the Fifth Amendment's Due Process Clause when it takes away

someone's life, liberty, or property under vague criminal statutes that fail to "give ordinary people fair notice of the conduct it punishes, or [are] so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 598 (2015). Vague laws also undermine the careful balance struck by the separation of powers between the branches. *See United States v. Davis*, 139 S. Ct. 2319, 2325 (2019). "Only the people's elected representatives in the legislature are authorized to 'make an act a crime.'" *Id.* (quoting *United States v. Hudson*, 11 U.S. 32, 34 (1812)).

Mr. Stennerson can maintain a facial challenge to Section 922(g)(3) because the statute implicates a fundamental right. The Second Amendment is "among those fundamental rights necessary to our system of ordered liberty." *McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 778 (2010). Thus, a statute that implicates an individual's Second Amendment right to keep and bear arms is subject to facial challenges. To hold otherwise would risk treating the Second Amendment as a "second class right." *McDonald*, 561 U.S. at 780. Further, the Supreme Court in *Johnson v. United States* rejected the notion that a statute is facially void "only if it is vague in all its applications." 576 U.S. 591, 603 (2015).

Mr. Stennerson urges this Court to follow *Morales-Lopez*'s opinion holding "[Section 922(g)(3) is unconstitutionally vague both because it fails to give ordinary people fair notice of what conduct it prohibits and because it invites courts, rather than the legislature, to decide what constitutes a crime." *Morales-Lopez*, 2022 WL

12

2355920, at *8 (D. Utah, June 30, 2022). The *Morales-Lopez* court explained that Section 922(g)(3) fails to give notice to the conduct it prohibits by failing to define both "user" and provide a temporal proximity requirement. *Id.* at *8-9. The *Morales-Lopez* court explained that "unlawful user" fell between something more than a single use but was less than the alternative category of "addict." *Id.* at *8 (discussing that "unlawful user" is less than "ongoing, frequent, habitual use," and does not need to be someone "who is presently under the influence of drugs"). The court further noted that Section 922(g)(3) was unconstitutionally vague "[b]ecause the term 'user' does not connote regular and ongoing use, it would be unclear to the ordinary person at what point he or she, after unlawfully using a controlled substance, may lawfully possess a firearm." *Id.* at *9. The lack of a temporal proximity requirement and the failure to clarify what specific conduct falls within Section 922(g)(3)'s scope makes the statute unconstitutionally vague.

To combat the uncertainty within Section 922(g)(3), courts have added a temporal element to the statute. *See United States v. Espinoza-Roque*, 26 F.4th 32, 35 (1st Cir. 2022) ("[T]he temporal limitation is necessary 'to avoid unconstitutional vagueness' in the statutory definition."). As discussed by the *Morales-Lopez* court, "judicial efforts to add an element to the statute illustrate the way in which § 922(g)(3) runs afoul of separation-of-power principles." *Morales-Lopez*, 2022 WL 2355920, at *10. Court creations of temporal requirements served as an example of

"the legislature casting an overly broad net and leaving the judiciary to determine who stays in the net and who does not." *Id.* The variability in circuit decisions defining a temporal requirement in Section 922(g)(3) makes it difficult to determine whether this variability "align[s] with the prohibitions Congress intended to enact." *Id.* at *9 (discussing that circuit decisions have failed to provide parameters to what qualifies as "'regular,' 'consistent,' 'prolonged,' 'habitual,' or 'contemporaneous.'"). The inability to determine what specific conduct is prohibited under Section 922(g)(3) makes the statute void for vagueness. *See id.* at *11 (discussing that only when courts have impermissibly imposed a temporal nexus requirement does Section 922(g)(3) possess an identifiable specific type of conduct). Because the term "user" is open-ended and there is no explicit statutory temporal requirement, an ordinary citizen would not know when his or her conduct in using a controlled substance may result in the forfeiture of his or her Second Amendment rights.

Not only is Section 922(g)(3) vague on its face, but the statute is also vague as applied to Mr. Stennerson. No controlled substance was recovered from Mr. Stennerson's person when police seized the CZ 9mm firearm on March 30, 2022. No evidence was obtained indicating that Mr. Stennerson was on a controlled substance the night of March 30, 2022. The only evidence that Mr. Stennerson is an "unlawful user" consisted of his pending state felony drug possession charges. The

14

facts of this case are markedly different from others where as-applied challenges were rejected. *See, e.g.,* U*nited States v. Cook,* 970 F.3d 866, 877-78 (7th Cir. 2020) (rejecting as applied challenge where defendant had been using for ten years, had smoked two blunts on the day of his arrest, and his person and car smelled of marijuana when he was stopped and found holding a firearm); *United States v. Bramer*, 832 F.3d 908, 909-10 (8th Cir. 2016) (rejecting as applied challenge when defendant was found using marijuana while possessing a firearm); *United States v. Hasson*, 26 F.4th 610, 616-17 (4th Cir. 2022) (rejecting as applied challenge where defendant tested positive for opioids and had amassed numerous weapons).

**CONCLUSION**

Because Section 922(n) and Section 922(g)(3) unconstitutionally infringe upon Stennerson's rights to keep and bear arms under the Second Amendment and because Section 922(g)(3) is impermissibly vague on its face and as applied to Stennerson in violation of the Due Process Clause of the Fifth Amendment, dismissal of both Count 1 and Count 2 in Stennerson's indictment is the appropriate remedy.

Stennerson respectfully requests the Court to set a hearing in this matter if the Court deems it appropriate.

/ / /

/ / /

RESPECTFULLY SUBMITTED this 28th day of December, 2022.

/s/ Gillian E. Gosch
GILLIAN E. GOSCH
Federal Defenders of Montana
    Counsel for Defendant

## CERTIFICATE OF COMPLIANCE

I hereby certify that this Memorandum in Support of Defendant's Rule 15(a) Motion For Deposition of Witness For Preservation at Trial is in compliance with Local Rule 12.1(e)  The Brief's line spacing is double spaced.  The brief is proportionately spaced, the body of the argument has a Times New Roman typeface, 14 point size and contains 3,265 words, excluding tables and certificates.

DATED this 28th day of December, 2022.

/s/ Gillian E. Gosch
GILLIAN E. GOSCH
Federal Defenders of Montana
Counsel for Defendant